**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**BRYANT KEITH BALLES,**

                        **Plaintiff,**

    **vs.**                                         **3:11-CV-1386
                                                        (MAD)**

**MICHAEL ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

Olinsky Law Group                    Karen S. Southwick, Esq.
One Park Place
300 South Salina Street
Syracuse, New York 13202
*Attorneys for Plaintiff*

Social Security Administration         Sixtina Fernandez, Esq.
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
*Attorney for Defendant*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Plaintiff Bryant Keith Balles brings the above-captioned action pursuant to 42 U.S.C. § 405(g) and § 1383 of the Social Security Act, seeking a review of the Commissioner of Social Security's decision to deny his application for supplemental social security income ("SSI").

### BACKGROUND

On April 28, 2009, plaintiff protectively filed an application for SSI. (T. 105).[1] Plaintiff was 51 years old at the time of the application with past work experience in construction, manufacturing and the laundry industry. (T. 119, 124). Plaintiff has a tenth grade education. (T. 124). Plaintiff alleges that he became disabled on November 24, 2008 due to the condition of his back, ankles and hypertension. (T. 105, 114, 117, 118).

On July 1, 2009, plaintiff's application was denied and plaintiff requested a hearing by an ALJ which was held on March 8, 2011. (T. 9-15). On May 18, 2011, the ALJ issued a decision denying plaintiff's claim for benefits. (T. 9-15). The Appeals Council denied plaintiff's request for review on September 27, 2011, making the ALJ's decision the final determination of the Commissioner. (T. 1-5). This action followed.

## DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

---

[1] "(T.)" refers to pages of the Administrative Transcript, Dkt. No. 8.

2

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

On May 18, 2011, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since April 28, 2009. (T. 11). At step two, the ALJ concluded that plaintiff suffered from degenerative disc disease of the lumbar spine, status post interbody fusion from L3 to L5 and lumbar laminectomy at L5-S1 and asthma which qualified as a "severe impairments" within the meaning of the Social Security Regulations (the "Regulations"). (T. 11). At the third step of the analysis, the ALJ determined that plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. (T. 12). The ALJ found that plaintiff had the residual functional capacity ("RFC") to, "lift no more than 20 pounds at a time with frequent lifting/carrying of objects weighing up to 10 pounds; stand for 6 hours out of an 8 hour workday; walk for 6 hours out of an 8 hour workday; and sit for 6 hours out of an 8 hour workday". (T. 12). At step four, the ALJ concluded that plaintiff did not have any past relevant work. (T. 14). At step five, relying on the medical-vocational guidelines ("the grids") set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff had the RFC to perform jobs existing in significant numbers in the national economy. (T. 15). Therefore, the

ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T. 15).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the Commissioner erred when he failed to incorporate all of the opinions expressed by the consultative examiner, Dr. Pranab Datta, into the RFC assessment; (2) the Commissioner erred because he failed to obtain a "function by function" analysis from plaintiff's treating physician and from Binghamton General Hospital Emergency Room; (3) the ALJ improperly assessed plaintiff's credibility; and (4) the ALJ should have elicited testimony from a vocational expert. (Dkt. No. 11).

## I. Residual Functional Capacity ("RFC")

Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)). In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ failed to incorporate all of Dr. Datta's opinions into the RFC assessment and failed to properly develop the record.

## A.     Dr. Datta's Opinions

On June 23, 2009, Dr. Pranab Datta conducted an orthopedic examination of plaintiff at the request of the agency. (T. 240). Plaintiff complained of low back pain and reported that his right fingers, "lock from time to time". (T. 240). Plaintiff stated that he cooked, did "small cleaning", did laundry, shopped, and socialized with his friends. Plaintiff brought a cane to the examination but did not use it. Upon examination, Dr. Datta noted that plaintiff exhibited a mildly abnormal gait, decreased flexion-extension of his lumbar spine, and moderate lumbar spine and sciatic notch tenderness. Dr. Datta also found that the claimant was in no acute distress with full lateral flexion of his lumbar spine, 5/5 strength in his legs, and no sensory abnormalities in his legs. With respect to his fine motor activity, plaintiff could zip a zipper, button small buttons and his hand/finger dexterity was intact. Plaintiff's grip strength was 5/5 bilaterally. (T. 241). Dr. Datta examined plaintiff's upper extremities and observed:

> Full ROM of shoulders. Full ROM of elbows, forearms, wrists, and fingers bilaterally. No joint inflammation, effusion, or instability. Strength 5/5 in proximal and distal muscles. No muscle atrophy. No sensory abnormality. Reflexes physiological and equal. (T. 242).

Dr. Datta noted that the claimant had little difficulty rising from a chair and needed no help changing for the exam or getting on/off the exam table. (T. 241). Dr. Datta's Medical Source Statement provides:

> The claimant has no limitations with his speech or hearing. His fingers lock from time to time. He has mild limitations with fine and gross motor activities using the right hand. No limitation on the left side. He has mild limitations for prolonged sitting, standing and

5

> walking. He has mild to moderate limitations for climbing. No heavy
> lifting, carrying, or squatting. (T. 242).

The ALJ discussed Dr. Datta's objective findings and the doctor's opinion. The ALJ gave, "great weight to Dr. Datta's opinion because it is generally consistent with the evidence as a whole". (T. 14).

Plaintiff argues that the ALJ "cherry picked" portions of Dr. Datta's opinion without explanation. Specifically, plaintiff claims that the ALJ failed to consider Dr. Datta's opinion that "plaintiff's fingers lock from time to time" and that plaintiff "takes short steps at a time". The Commissioner claims that the ALJ is not obligated to discuss every observation made by Dr. Datta and moreover, the ALJ was not required to adopt plaintiff's subjective complaints.

It is a fundamental tenet of Social Security law that an ALJ cannot selectively pick and choose only parts of a medical opinion that support his determination. *See Nix v. Astrue*, 2009 WL 3429616, at *6 (W.D.N.Y.2009). The ALJ is not required to discuss each piece of evidence he considered. *Barringer v. Comm'r*, 358 F.Supp.2d 67, 78-79 (N.D.N.Y.2005) (noting that an ALJ's failure to cite specific evidence does not mean it was not considered). While the ALJ excluded the sentence regarding plaintiff's fingers "locking" from his recitation of Dr. Datta's opinion, the omission does not require remand. Upon a review of Dr. Datta's report, the Court finds that the "locking" issue was a subjective complaint communicated by plaintiff and unsupported by objective evidence. Dr. Datta examined plaintiff's fingers and expressed no positive findings that would support plaintiff's complaints. Plaintiff also claims that the ALJ erred when he failed to address the doctor's observation that plaintiff, "takes short steps at a time". (T. 241). Again, these observations are unsupported by Dr. Datta's objective findings and opinions. Dr. Datta concluded that plaintiff had only mild limitations in walking.

Upon a thorough review of Dr. Datta's report, the Court finds that the ALJ did not err by failing to include each subjective complaint expressed and every observations made during the consultative examination. Substantial evidence supports the ALJ's conclusions in this regard.

## B.   Duty to Develop Record

Plaintiff claims that the ALJ did not fully develop the record because he failed to recontact plaintiff's treating physician and failed to contact the emergency room physicians at Binghamton General Hospital for their opinions on plaintiff's ability to perform work-related functions.

The ALJ has an affirmative duty to develop the record, whether the claimant is *pro se* or otherwise represented. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). An ALJ has an obligation to develop the administrative record, including, in certain circumstances, recontacting a source of a claimant's medical evidence, *sua sponte*, to obtain additional information. *Lukose v. Astrue*, 2011 WL 5191784, at *3 (W.D.N.Y. 2011) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)). The Regulations state that an ALJ will obtain additional evidence if he/she is unable to make a determination of disability based on the current record. 20 C.F.R. § 404.1527(c)(3):

> If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will consider any additional evidence we receive together with the evidence we already have.

20 C.F.R. § 404.1527(c)(3).

"The duty to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations." *Dickson v. Astrue*, 2008 WL 4287389, at *13 (N.D.N.Y. 2008). Recontacting medical providers

7

is necessary when the ALJ cannot make a disability determination based on the evidence of record. *Donmore v. Astrue*, 2009 WL 2982982, at *4 (W.D.N.Y.2009) (citing 20 C.F.R. § 404.1512(e)). However, the ALJ does not have a duty to re-contact a treating physician if the evidence the treating source submits as a whole, is complete. *Hluska v. Astrue*, 2009 WL 799967, at * 17 (N.D.N.Y.2009). Moreover, the ALJ is not obligated to recontact treating physicians when the record contains no critical gaps and medical opinions from different sources concerning plaintiff's impairments. *Taylor v. Astrue*, 2008 WL 3884356, at *13 (N.D.N.Y.2008).

   1. **Khalid Sethi, M.D.**

On February 17, 2009, plaintiff was seen by Khalid Sethi, M.D. at Southern New York Neurosurgical Group, P.C. for complaints of "severe mechanical back discomfort" and progressive weakness in his leg. (T. 171). Dr. Sethi diagnosed plaintiff with right L3-4, 4-5 canal stenosis with herniated nucleus pulposus; degenerative spondyliolisthesis L3-4, 4-5 and lateral recess stenosis, severe, right L3-4, 4-5. Dr. Sethi discussed treatment options with plaintiff. Plaintiff opted to proceed with surgery. (T. 172). On March 24, 2009, Dr. Sethi performed a posterior spinal fusion of L3 through L5 with PEEK rods. (T. 202). On April 7, 2009, plaintiff had a follow up visit with Dr. Sethi and was "doing very well". (T. 215). Plaintiff stated that his pain was well controlled and that he had significant reduction in leg pain. Plaintiff was fit for a bone stimulator and prescribed Vicodin for pain and physical therapy.

On April 17, 2009, plaintiff returned for a follow up and removal of staples. Plaintiff was directed not to wear his brace "quite so tight" and scheduled for physical therapy. (T. 214). On May 19, 2009, plaintiff returned for a re-evaluation and Dr. Sethi noted, "he is really doing quite well from my perspective", "he's got excellent strength with no focal weakness". Dr. Sethi noted there were no active issues and advised plaintiff to stay out of work for another couple of months

and advance his activities as tolerated. With respect to medications, Dr. Sethi noted, "[a]t his request I did refill his Vicodin today that he tells me he's using sparingly". (T. 213).

At the commencement of the administrative hearing, plaintiff's counsel indicated that there were outstanding medical requests to Drs. Sethi and Roche. Counsel asked that the ALJ hold the record open for "two or three weeks" so that she could obtain that evidence. The ALJ agreed to keep the record open until March 29, 2011. At the beginning of the written decision, the ALJ noted:

> the undersigned granted Ms. Eaton's request that the record be held open for three weeks in order for her to obtain additional records from Dr. Roche, the claimant's primary provider, and Dr. Sethi, the claimant's treating neurosurgeon. Treatment notes from Dr. Roche have been received and admitted into evidence as Exhibit 12F. However, it has now been more than nine weeks and no additional treatment notes from Dr. Sethi have been submitted. (T. 9).

Plaintiff claims that while the ALJ held the record open, that does not "preclude the ALJ from fulfilling his duty to develop the record". However, plaintiff does not cite to any caselaw in support of that assertion. In fact, courts have routinely held that an ALJ satisfies his duty to develop the record by leaving the record open for an ample amount of time for plaintiff to submit treatment records and/or a medical source statement. *Martinez-Paulino v. Astrue,* 2012 WL 3564140, at *14 (S.D.N.Y. 2012); *see also Hootman v. Comm'r of Soc. Sec*., 2012 WL 5951494, at *1 (9th Cir. 2012) (the ALJ complied with her duty to develop the record by leaving the record open for supplemental evidentiary submissions). In this case, plaintiff was represented by competent counsel who requested two to three weeks additional time. The ALJ held the record open for nine weeks and considered evidence that was later submitted from Dr. Roche. Counsel did not seek additional time to follow with Dr. Sethi and did not request an additional hearing. Moreover, plaintiff fails to cite to any portion of the record that was insufficient or any gaps in the

9

record that would compel the ALJ to seek additional opinions from Dr. Sethi. Based upon these circumstances, the ALJ fulfilled his duty to develop the record with respect to Dr. Sethi.

### 2. Opinion from Emergency Room Physicians

Plaintiff claims that the ALJ had a duty to contact the physicians at Binghamton General Hospital Emergency Room to obtain their opinions with regard to plaintiff's ability to perform work-related functions. Plaintiff has not identified, by name, any of the physicians at the emergency room. The Second Circuit has defined a treating physician as one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Coty v. Sullivan*, 793 F.Supp. 83, 85–86 (S.D.N.Y. 1992) (quoting *Schisler v. Bowen*, 851 F.2d 43 (2d Cir. 1988)). Here, plaintiff has not produced any evidence that any of the doctors at the emergency room had an ongoing treating relationship with plaintiff. *Towers v. Astrue*, 2010 WL 3338724, at *4 (N.D.N.Y. 2010); *see George v. Bowen*, 692 F.Supp. 215, 219 (S.D.N.Y. 1988) (holding that the nature of the physician's relationship with the plaintiff did not rise to the level of a treating physician as the physician had only seen the plaintiff on two occasions); *see also Quinones v. Barnhart*, 2006 WL 2136245, at *7 (S.D.N.Y. 2006) (holding that the treating physician's opinion was correctly afforded less weight as he only saw the plaintiff on one occasion). Plaintiff has not proven, factually or legally, that the ALJ was obligated to recontact unidentified physicians who may, or may not, have had treating relationships with plaintiff for an opinion regarding plaintiff's functional limitations.

The record contains sufficient evidence to support the ALJ's RFC. A Physical Residual Functional Capacity Assessment was prepared by a state agency analyst, W. Kovalaskas and dated June 25, 2009. (T. 51). The analyst concluded that plaintiff could occasionally lift and/or

10

carry 20 pounds; frequently lift/carry 10 pounds; and sit, stand or walk for 6 hours in an 8 hour workday. The analyst did not include any environmental limitations. Plaintiff does not challenge the ALJ's reliance upon this assessment. Accordingly, based upon a review of the record, the Court finds that substantial evidence supports the ALJ's RFC analysis.

## II. Credibility

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96–7p, 1996 WL 374186, at *2 (SSA 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record. SSR 96–7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.

11

*Saxon v. Astrue*, 781 F.Supp.2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations omitted)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *Howe–Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y.2007).

In this case, the ALJ discussed plaintiff's hearing testimony and determined:

> the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are partially credible to the extent they are consistent with the evidence of record. (T. 12).

Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F. R. § 404.1529(c)(3)(i)-(iv), in assessing plaintiff's credibility. The ALJ discussed plaintiff's daily activities, i.e., cooking, laundry, vacuuming, grocery shopping, visiting friends, and going outside on a daily basis. (T. 14). The ALJ thoroughly discussed plaintiff's subjective complaints, including the frequency and intensity of his symptoms, including constant burning in his mid-back, pain in his right calf, shortness of breath/wheezing. (T. 13).

Plaintiff objects to the portion of the decision wherein the ALJ considered the fact that plaintiff stopped working in January 2001 because he was "laid off". (T. 14). Plaintiff claims that this does not undermine his credibility because he did not file his application for benefits until 2009. However, plaintiff does not claim that he was employed at any time after January 2001. Plaintiff testified that he began receiving public assistance in 2002. (T. 29). Based upon the

12

record, the ALJ properly considered the fact that plaintiff was laid off for reasons other than his impairment in assessing plaintiff's credibility. *See Harrelson v. Astrue*, 273 F. App'x 632, 634 (9th Cir. 2008) (the ALJ may consider the fact that plaintiff left his job because he was laid off rather than because he was injured).

Plaintiff also claims that the ALJ failed to consider his medication and other measures taken to relieve pain including prescriptions for Vicodin, the use of Lidoderm patches and a bone stimulator. However, plaintiff does not claim that he experienced any side effects from any medication and testified that the pain patch helped "a little bit". (T. 42). Indeed, the ALJ noted that, "Dr. Sethi's treatment notes show that the claimant reported doing well after his March 2009 back surgery and was using minimal amounts of his medications". (T. 13). Moreover, while the record indicates that plaintiff was "fit[ted] for a bone stimulator and instructed on it's use", (T. 215), the record contains no evidence indicating that plaintiff utilized the bone stimulator.

Taken as a whole, the record supports the ALJ's determination that plaintiff was not entirely credible. The Court finds that the ALJ employed the proper legal standards in assessing the credibility of plaintiff's complaints of pain and adequately specified the reasons for discrediting plaintiff's statements.

**III.    Vocational Expert and the Medical-Vocational Guidelines**

Plaintiff argues that the ALJ erred in failing to elicit vocational expert testimony in this case, and instead relying exclusively on the Medical-Vocational Guidelines, or "grids". Plaintiff argues that the ALJ failed to consider his non-exertional impairments including his limited manipulative ability with his right hand and asthma. The Commissioner contends that the record does not corroborate plaintiff's assertions.

13

Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability. *Pratt v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996). Generally speaking, if a claimant suffers only from exertional impairments, then the Commissioner may satisfy his burden by resorting to the applicable grids.[2] *Id.* at 39. The grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience". *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the applicable medical vocational guidelines (the grids)". *Id.* at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids.[3] *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). The testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work-over and above any incapacity caused solely from exertional limitations-so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Id.* at 605-06. The use of the phrase "significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him

---

[2] An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *see also Rodriguez v. Apfel*, 1998 WL 150981, at *10, n. 12 (S.D.N.Y. 1998).

[3] A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(i), (ii), (iv), (v), 416.969a(a), (c)(i), (ii), (iv), (v); *see also Rodriguez*, 1998 WL 150981, at *10, n. 12.

of a meaningful employment opportunity". *Id.* at 606. Rather, exclusive reliance on the Grids will be deemed inappropriate only where the non-exertional impairments " significantly limit the range of work permitted by his exertional limitations." *Id.* at 605-06 (emphasis added). "A claimant's work capacity is 'significantly diminished' if there is an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.' " *Bapp,* 802 F.2d at 606.

Under these circumstances, to satisfy his burden at step five, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Rosa*, 168 F.3d at 78 (quoting *Bapp,* 802 F.2d at 604). Therefore, when considering nonexertional impairments, the ALJ must first consider the question - whether the range of work the plaintiff could perform was so significantly diminished as to require the introduction of vocational testimony. *Samuels v. Barnhart*, 2003 WL 21108321, at *12 (S.D.N.Y. 2003) (holding that the regulations require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations on his work capacity before using the grids).

In this case, the ALJ concluded, "based on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.10". (T. 15). On January 29, 2009, plaintiff complained to Timothy Roche, D.O. of pain in his right hand that caused "cramps" in his middle and ring finger. (T. 228). Roche examined plaintiff's extremities and made no objective findings. (T. 229). With respect to asthma, Roche noted that plaintiff suffered from COPD which was aggravated by the cold air and stairs but that plaintiff used an inhaler that helped. (T. 254). There is no evidence that plaintiff's asthma or right hand impairments resulted in limitations on

15

plaintiff's ability to do light work. Plaintiff does not cite to any portion of the record or any treatment note that indicates that plaintiff's asthma or right hand impairments significantly impacted his ability to perform work-related functions. This Court previously held that the RFC analysis is supported by substantial evidence. Therefore, the ALJ was permitted to rely on the Grids at the fifth step of the sequential evaluation to assess that there were a significant number of jobs in the light work category in both the national and local economy that plaintiff could perform. *See* SSR 83-10; SSR 85-15; *see also* Bapp, 802 F.2d at 605.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated: January 23, 2013
Albany, New York

Mae A. D'Agostino
U.S. District Judge